# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLY HARMON, *Individually* *and as Wrongful Death Beneficiary* *of Chayse Harmon, Deceased* | § § § § § | PLAINTIFF |
| v. | § § § | Civil No. 1:24-cv-242-HSO-RPM |
| CITY OF OCEAN SPRINGS, MISSISSIPPI, et al. | § § § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT JACKSON COUNTY, MISSISSIPPI'S MOTION [38] FOR JUDGMENT ON THE PLEADINGS; DISMISSING PLAINTIFF'S FEDERAL CLAIMS; AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

In this case arising under 42 U.S.C. § 1983, Defendant Jackson County, Mississippi (the "County"), seeks judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See* Mot. [38]. Because Plaintiff Kimberly Harmon's Amended Complaint [3] fails to state a plausible federal claim against the County, its Motion [38] should be granted in part, as to all federal claims against the County, which should be dismissed with prejudice. The Motion [38] should be denied without prejudice, to the extent it seeks dismissal of the remaining state-law claims. The Court will decline to exercise supplemental jurisdiction over the state-law claims and will dismiss those claims without prejudice.

## I. BACKGROUND

A. Factual Background

In May 2023, Plaintiff Kimberly Harmon's ("Plaintiff" or "Ms. Harmon") son, Chayse Harmon ("Chayse"), was tragically shot and killed by an unnamed individual at an establishment known as The Scratch Kitchen in Ocean Springs, Mississippi. Am. Compl. [3] at 4. No factual information is provided concerning the events surrounding the shooting, although Plaintiff does allege that the "establishment was a known area for crime." *Id.* at 5.

After Chayse was shot, a nurse who happened to be present rendered aid "to keep his heart beating until first responders arrived." *Id.* But Plaintiff claims that once police officers and deputies arrived on scene, they "told the nurse . . . to stop and step back," which "prevented life-saving medical treatment from being provided," resulting in Chayse's death, "in contrast to the written statements, policies, training, and procedures of the Defendants." *Id.*

According to the Amended Complaint [3], prior to the fatal shooting, Defendants City of Ocean Springs, Mississippi (the "City"); Kenny Holloway, Mayor of Ocean Springs Mississippi ("Mayor Holloway"); Ocean Springs Police Department ("OSPD"); the County; the Jackson County Sheriff's Department (the "Sheriff's Department"); John Ledbetter, Sheriff of Jackson County, Mississippi ("Sheriff Ledbetter"); and John Does 1-30, "were negligent for allowing a high crime area to continue unchecked and not stopped." *Id.* at 5. The Amended Complaint [3] alleges that OSPD; OSPD Chief of Police Ryan Lemaire ("Chief Lemaire"); the County; the Sheriff's Department; Sheriff Ledbetter; and John Does 1-30,

> prior to and including the events described herein, entered into and participated in practice and policies of condoning, overlooking, permitting, aiding, and assisting officers of the [OSPD] and deputies of the Jackson County Sheriff's Department in committing illegal, unconstitutional bad acts against the citizens, including the Plaintiff's deceased son, Chayse Harmon, while in the City of Ocean Springs Mississippi and in Jackson County, Mississippi.

*Id.* at 7-8. Plaintiff contends that "[a]ll of the Defendants' combined negligent, gross negligent, and/or actions, and inactions were the proximate cause of the untimely death and the wrongful death" of Chayse. *Id.* at 8.

Specifically, Plaintiff asserts that "Defendants' actions and inactions prevented life-saving medical treatment from being provided to Chayse Harmon which resulted in his untimely death in contrast to the written statements, policies, training, and procedures of the Defendants." *Id.* at 6. The Amended Complaint [3] further alleges that the County failed to provide its deputies and employees with adequate supervision and training and failed to enact or enforce policies related to "the medical care and treatment of suspects, reasonable search or investigation, [and] the appropriate use of force," and that the County "had in place written or unwritten policies, practices, and/or customs which encouraged, enabled and/or allowed . . . the County's deputies/employees, to act with deliberate indifference to the constitutional rights of individuals." *Id.* at 13.

B. <u>Procedural History</u>

Proceeding individually and as a wrongful death beneficiary of Chayse, Plaintiff filed suit in this Court, *see* Compl. [1] at 1, and amended her pleadings

3

once, *see* Am. Compl. [3] at 1.[1]  The Amended Complaint [3] advances claims against Defendants for violations of 42 U.S.C. §§ 1983, 1985, and 1986, and state-law claims for intentional and negligent infliction of emotional distress, general negligence, gross negligence, and vicarious liability, and for violation of rights under the Mississippi Constitution.  *Id.* at 8-21.  The Sheriff's Department and Sheriff Ledbetter have both been dismissed as Defendants.  *See* Agreed Order [28]; Order [14].  Plaintiff's claims against OSPD, her 42 U.S.C. §§ 1983, 1985, and 1986 claims against Mayor Holloway and Chief Lemaire, and her §§ 1985 and 1986 claims against the City have been dismissed with prejudice, and her § 1983 claims against the City and state-law tort claims against the City, Mayor Holloway, and Chief Lemaire, and all of her claims against John Does 1-30, have been dismissed without prejudice.  *See* Order [30] at 30-31; Order [57] at 2.  What remains are Plaintiff's state constitutional claims against the City, Mayor Holloway, and Chief Lemaire, and all of her claims against the County.  *See* Order [30] at 31.

The County has now filed a Motion [38] for Judgment on the Pleadings, seeking dismissal of all claims against it.  *See* Mot. [38] at 1-2.  It argues that Plaintiff cannot establish § 1983 liability against it under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and that Plaintiff's federal conspiracy claims under §§ 1985 and 1986 likewise fail.  *See* Mem. [39] at 4-7; Reply [45] at 2-4.  As for Plaintiff's state-law claims, the County argues that it

---

[1] Plaintiff filed a Second Amended Complaint [5] without leave of Court on October 24, 2024, *see* 2d Am. Compl. [5], which was stricken, *see* Text Order, Oct. 25, 2024.  The Amended Complaint [3] thus remains the operative pleading.  *See id.*

4

enjoys immunity from the intentional infliction of emotional distress claim and that all of Plaintiff's negligence claims are barred by the police protection exemption of the Mississippi Tort Claims Act ("MTCA"), Mississippi Code § 11-46-9(1)(c). *See* Mem. [39] at 7-9; Reply [45] at 4-5. Finally, the County contends that Plaintiff's vicarious liability claim should be dismissed for the same reason it was dismissed against the City, *see* Mem. [39] at 9-10, and that the state constitutional claims should be dismissed because the pleadings do not articulate how the County violated any provision of the Mississippi Constitution, *see id.* at 10-14; *see* Reply [45] at 6-8. Plaintiff opposes the Motion [38], arguing that the Amended Complaint [3] plausibly alleges all claims against the County. *See* Resp. [43] at 1-2; Mem. [44] at 4-11.

## II. DISCUSSION

A. Standard of Review

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the pleadings have closed. *See* Fed. R. Civ. P. 12(c). Courts apply the same standard to Rule 12(c) and Rule 12(b)(6) motions. *See Sterling v. City of Jackson*, 159 F.4th 361, 371-72 (5th Cir. 2025). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The court's task is to determine

5

whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

In deciding whether a complaint states a valid claim for relief, a court must "accept all well-pled facts as true and construe all reasonable inferences in the light most favorable to the plaintiff." *Robinson v. Midland Cnty.*, 80 F.4th 704, 709 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1010 (2024) (quotation omitted). But the Court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quotation omitted).

B. <u>Plaintiff's Federal Claims</u>

1. <u>Plaintiff's § 1983 Municipal Liability Claims against the County</u>

a. *<u>Monell</u>* <u>Liability under § 1983</u>

Because recovery under § 1983 cannot be predicated upon a theory of *respondeat superior*, *see Monell*, 436 U.S. at 691, to state a claim against the County, "the unconstitutional conduct must be directly attributable to the [entity] through some sort of official action or imprimatur; isolated unconstitutional actions by [entity] employees will almost never trigger liability," *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (footnote omitted); *see Monell*, 436 U.S. at 691-94. Plaintiff must show "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) (quotations omitted).

6

The existence of an official policy or custom can be shown either through evidence of "an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policy-making authority," or by showing that there is a "persistent, widespread practice of [county] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [county] policy." *Id.* at 680-81 (quotations omitted). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for [county] section 1983 liability." *Piotrowski*, 237 F.3d at 581 (quotation omitted).

In the failure-to-train context, a § 1983 plaintiff must show: "(1) the training or hiring procedures of the [county's] policymaker were inadequate; (2) the [county's] policymaker was deliberately indifferent in adopting the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Langiano v. City of Fort Worth*, 131 F.4th 285, 294 (5th Cir. 2025) (quotation omitted). The focus of the inquiry must be on a training program's adequacy as to the tasks the particular officers must perform, and "[t]he inadequacy of training must be closely related to the injury." *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002). In other words, "defects in a particular training program must be specifically alleged." *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021) (quotation omitted).

A plaintiff must demonstrate that, in light of the duties assigned to specific officers or employees, "the need for more or different training is so obvious, and the

7

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010) (quotation omitted). "Deliberate indifference is a stringent standard, requiring proof that a [county] actor disregarded a known or obvious consequence of his action." *Id.* (quotations omitted). To adequately state a claim, "plaintiffs must cite sufficiently numerous prior incidents, each of which includes specific facts that are sufficiently similar to those alleged here." *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir.), *cert. denied*, 145 S. Ct. 772 (2024).

Finally, to support a § 1983 claim based upon a county's failure to adopt a policy, "[i]t is well-established that municipalities [or counties] can be liable for their failure to adopt policies if the omission amounts to an intentional choice." *J. T. v. Uplift Educ.*, No. 23-10773, 2024 WL 5118486, at *8 (5th Cir. Dec. 16, 2024) (per curiam) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). "Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference." *Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025) (quotation omitted).

b. <u>Analysis</u>

The Amended Complaint [3] asserts that the establishment where Chayse was shot was a "known area for crime," but "nothing was done to stop it or to prevent any future crime from occurring." Am. Compl. [3] at 5. And the County was "*negligent* for allowing a high crime area to continue unchecked and not stopped." *Id.* (emphasis added). As for the officers and deputies who allegedly

8

caused the nurse to cease life-saving aid, "Defendants' actions and inactions prevented life-saving medical treatment from being provided to Chayse Harmon which resulted in his untimely death *in contrast to* the written statements, policies, training, and procedures of the Defendants." *Id.* (emphasis added); *see id.* at 6 (same). According to the pleadings, the officers' conduct was the result of "negligent hiring, negligent training, and negligent supervision." *Id.* at 5. Plaintiff claims that the County failed to provide the Sheriff's Department's

> officers, deputies, and employees with adequate supervision and/or training and failed to enact or adopt consistent and unambiguous policies related to the medical care and treatment of suspects, reasonable search or investigation, the appropriate use of force, and/or failed to adequately train or instruct . . . Jackson County Sheriff's Department deputies concerning such policies and/or failed to adequately enforce such policies or to adequately supervise those individuals carrying out such duties. Such failure constitutes a deliberate indifference to the known and/or obvious need for proper supervision, training, enactment, or enforcement of adequate policies and the likely harm to members of the public, including the Plaintiff's son, Chayse Harmon, as a result.

*Id.* at 13.

The Amended Complaint [3] further alleges that the County "had in place written or unwritten policies, practices, and/or customs which encouraged, enabled and/or allowed . . . the County's deputies/employees, to act with deliberate indifference to the constitutional rights of individuals." *Id.* Acting "pursuant to official and/or unofficial policy and/or customs," the County "knowingly, reckless[ly], or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis . . . the deputies of the Jackson County Sheriff's Department" in the performance of their duties to refrain from:

9

> A.) Unlawfully and maliciously arresting, imprisoning, detaining, prosecuting, and denying life-saving medical care to citizens, including the Plaintiff's son, Chayse Harmon, who acted within accordance of his constitutional and statutory rights, privileges, and immunities.
> B.) Conspiring to violate the rights, privileges, and immunities guaranteed to the Plaintiff's son, Chayse Harmon, including his right to life-saving medical treatment, by the United States Constitution and the laws of the United States and the laws of the State of Mississippi; and,
> C.) Depriving the Plaintiff's deceased son, Chayse Harmon, of his constitutional and statutory rights, privileges, and immunities otherwise.

*Id.* at 10-11.

The foregoing allegations consist almost entirely of conclusory assertions or legal conclusions masquerading as factual contentions, and they are not sufficient to survive a Rule 12(b)(6) challenge. *See Turner*, 848 F.3d at 685. And to the extent they are not conclusory, the allegations against the County are improperly predicated upon a theory of *respondeat superior*, *see Piotrowski*, 237 F.3d at 578, focusing upon unnamed deputies' negligence in failing to prevent any future crime from occurring and in stopping the nurse from administering life-saving medical treatment to Chayse, *see* Am. Compl. [3] at 5. In short, there are insufficient factual details to plausibly support a finding of any unconstitutional conduct directly attributable to the County through some sort of official action or imprimatur. *See id.*; *Piotrowski*, 237 F.3d at 578. Nor does the Amended Complaint [3] identify a policymaker for the County who could be charged with any actual or constructive knowledge, which is also fatal. *See Newbury*, 991 F.3d at 680; *Piotrowski*, 237 F.3d at 579.

10

Instead, Plaintiff relies upon alleged isolated incidents which are not sufficiently persistent, repeated, or constant to establish a custom and policy. *See Piotrowski*, 237 F.3d at 581. And she asserts merely negligent conduct, *see* Am. Compl. [3] at 5, which falls far short of the deliberate indifference required to support liability, *see Valle*, 613 F.3d at 547. To the extent the Amended Complaint [3] alleges a defective training program, such defects must be specifically alleged, *see Hutcheson*, 994 F.3d at 482, and they are not, *see* Am. Compl. [3]. Instead, the Amended Complaint [3] makes the conclusory assertion that all Defendants failed to provide OSPD's and JCSD's deputies, officers, and employees with adequate training "related to the medical care and treatment of suspects, reasonable search or investigation, [and] the appropriate use of force." *Id.* at 13.

Finally, to the extent Plaintiff contends that the County's failure to adopt a policy violated § 1983, the Amended Complaint [3] alleges that the individual Defendants' interference with Chayse receiving life-saving medical treatment was "*in contrast to* the written statements, policies, training, and procedures of the Defendants." *Id.* at 8 (emphasis added); *see also id.* at 5, 6, 7 (same). This indicates not a failure to adopt a policy, but instead that the County's policies and procedures were not followed. And even if policies were lacking, the Amended Complaint [3] does not specifically allege what policies the County failed to adopt or how any such failure amounted to an intentional choice or deliberate indifference. *See id.* This is insufficient to support § 1983 liability against the County, *see Damond*, 127 F.4th at 938; *J. T.*, 2024 WL 5118486, at *8, and Plaintiff's § 1983 claims against the County should be dismissed.

2. <u>Plaintiff's § 1985 and § 1986 Claims</u>

In addition to her § 1983 claims, Counts One, Three, and Four allege that Defendants violated 42 U.S.C. § 1985. *See* Am. Compl. [3] at 9, 14. Section 1985 prohibits conspiracies to interfere with civil rights, including those "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Section 1985(3) "criminalizes only conspiracies that involve depriving someone of 'equal protection of the laws' or 'equal privileges and immunities under the laws,'" which "requires some form of class-based discrimination." *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (quoting 42 U.S.C. § 1985(3)).

The Amended Complaint [3] offers only conclusory assertions that a conspiracy existed and that its purpose was to deny Chayse equal protection of the laws. *See* Am. Compl. [3] at 9, 11. No facts are stated to support such a contention, nor are any facts pled suggesting the presence of any class-based discrimination. *See id.* And Plaintiff states that "[i]t is conceded that the Plaintiff has not alleged any class-based discrimination." Mem. [44] at 7. This is insufficient to state a § 1985 claim, *see Turner*, 848 F.3d at 685, and this claim should be dismissed.

Count One also claims that Defendants violated § 1986, *see* Am. Compl. [3] at 9, but a § 1986 claim must be premised upon the existence of a § 1985 claim, *see* 42 U.S.C. § 1986. "If the § 1985 claim fails, so must the § 1986 claim." *Newberry v. E. Texas State Univ.*, 161 F.3d 276, 281 n.3 (5th Cir. 1998). Because the § 1985 claim against the County should be dismissed, so should the § 1986 claim. *See id.*

3. <u>Exercise of Supplemental Jurisdiction</u>

The Court has now determined that all of Plaintiff's federal claims in this case should be dismissed. The only remaining claims are ones under state law, *see* Order [30] at 30-31; Order [57] at 2, and the Court questions whether it should decline to exercise supplemental jurisdiction over these remaining claims under 28 U.S.C. § 1367(c). In filing this lawsuit in federal court, Plaintiff invoked federal question jurisdiction under 28 U.S.C. § 1331, and there is clearly no diversity jurisdiction. *See* Compl. [1] at 2-4; Am. Compl. [3] at 2-4. Plaintiff is a "citizen of Jackson County, Mississippi," Compl. [1] at 2; Am. Compl. [3] at 2, as are many, if not all, Defendants, *see* Compl. [1] at 3-4; Am. Compl. [3] at 2-4; 28 U.S.C. § 1332(a) (requiring complete diversity of citizenship).

Section 1367(a) affords supplemental jurisdiction over state-law claims not within the Court's original jurisdiction which "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). But the statute also "spells out circumstances . . . in which a federal court may decline to hear a state claim falling within the statute's bounds," *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025), including if "the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016) (per curiam) (quotation omitted). In deciding whether to exercise supplemental jurisdiction, a court considers the "common law factors of judicial

13

economy, convenience, fairness, and comity." *Id.* (quotation omitted). "And based on these factors, [the Fifth Circuit has] elucidated the general rule that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Id.* (quotation omitted).

Considering the foregoing factors, the Court finds that it should decline to exercise supplemental jurisdiction over the remaining state-law claims, which are not within its original jurisdiction. *See id.*; 28 U.S.C. § 1367(c)(3). This case remains in its early states in that no Case Management Order has been entered or trial date set. No discovery has occurred, and the federal claims will be dismissed well in advance of any trial. Accordingly, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims and will dismiss those claims without prejudice. *See* 28 U.S.C. § 1367(c)(3).

### III. CONCLUSION

To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result. The County's Motion [38] for Judgment on the Pleadings should be granted in part, as to the federal claims against the County, and denied without prejudice in part, as to the state-law claims. The Court will decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss them without prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Jackson County, Mississippi's Motion [38] for Judgment on the Pleadings is

**GRANTED IN PART**, and Plaintiff Kimberly Harmon's federal claims against Defendant Jackson County, Mississippi, are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff Kimberly Harmon's remaining state-law claims, and her state constitutional claims against Defendants City of Ocean Springs, Mississippi; Kenny Holloway, Mayor of Ocean Springs Mississippi; and Chief of Police Ryan Lemaire, and all of her state-law claims against Defendant Jackson County, Mississippi, are **DISMISSED WITHOUT PREJUDICE**. The Court will enter a separate final judgment pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 19th day of February, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE